IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AARON BROWN,

       Petitioner,

v.                                                                            Case No. 21-3128-JWB

JEFF BUTLER,

       Respondent.

**MEMORANDUM AND ORDER**

This matter comes before the court on Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent has filed a response opposing the petition for writ. (Doc. 17.) Petitioner has not filed a traverse and the time for doing so has expired. Several other motions are pending before the court; Petitioner has filed two motions to appoint counsel (Docs. 27, 28), a motion to change respondent (Doc. 29),[1] and a motion for the court to take judicial notice (Doc. 30).[2] For the reasons stated herein, Petitioner's petition for writ of habeas corpus (Doc. 1) and Petitioner's other motions (Docs. 27, 28, 29, 30) are DENIED.

**I.    Facts**

The following facts are taken from the Kansas Court of Appeals opinion following Petitioner's direct appeal:

> Brown attended a celebratory party on April 18, 2015, that followed a wedding. Brown came and left at least a couple of times during the evening and appeared to be drinking heavily. Many of the partygoers marked the occasion with alcoholic

---

[1] Petitioner requests to change the respondent from Jeff Butler (as warden for the El Dorado Correctional Facility) to Attorney General of Kansas. (Doc. 29) Petitioner offers no reason for the change, and Petitioner is still in custody at the El Dorado Correctional Facility. Thus, the court denies Petitioner's motion to change respondent.
[2] Petitioner's motion for judicial notice (Doc. 30) merely rehashes the arguments that Petitioner made or attempted to make in his petition for writ of habeas corpus. Thus, the court denies the motion.

beverages. As the time slipped past midnight, Brown said he didn't feel well and got up to leave.

Robert Lolar, another guest, then chose to declare rather randomly that he could "beat up anybody in the house." Brown, for some reason, felt obliged to respond: He pronounced that although he was too old to fight, he didn't need to because he had a gun. Unable to let things pass, Lolar pointedly replied, "Well, you got to get to it first." Brown, who had been walking away, drew a pistol from his waistband and turned, gun in hand, toward Lolar. Brown, equally pointedly, said, "I'll fight with this." And he warned Lolar not to take another step toward him. Gene Jordan, another party guest, told Brown, "[D]on't do it."

According to Brown, Lolar moved toward him. So in what he characterized as an effort to defend himself from Lolar's attack, Brown fired his pistol repeatedly. Lolar was shot eight times but survived. Later, Brown asserted that he never intended to kill Lolar and simply wanted to repel his attack. Lolar countered that he did not advance on Brown and simply looked at him.

During the trial, Jordan testified that he was standing in the vicinity of Lolar when Brown started shooting. Jordan told the jurors that after freezing momentarily, he ran for cover, fearful of being shot. But Jordan also said he didn't think Brown was shooting at him and he didn't feel personally threatened.

At the close of the trial evidence, the district court instructed the jurors on attempted intentional second-degree murder of Lolar with a lesser included offense instruction for attempted voluntary manslaughter based on imperfect self-defense. The district court instructed on aggravated assault as to Jordan and on Brown's unlawful possession of a firearm as a convicted felon. The district court also instructed the jurors on the law regarding self-defense.

On the verdict form, the jurors found Brown guilty of the unlawful possession and aggravated assault charges. The verdict form identified the lesser included offense of attempted second-degree murder as "attempted *involuntary* manslaughter" and identified by number the jury instruction on attempted voluntary manslaughter. The jurors indicated they found Brown guilty of attempted involuntary manslaughter. The verdict was read in open court as a conviction for attempted involuntary manslaughter. The jurors were then polled, and each juror averred that the verdicts as read were his or her verdicts. The district court then accepted the verdicts and discharged the jury. At the time, nobody raised the discrepancy between the verdict on the shooting of Lolar as published and what had been included in the instructions.

In a posttrial motion, Brown argued that the jury's verdict constituted an acquittal of the attempted second-degree murder charge and the lesser crime of attempted voluntary manslaughter. The district court took up the issue at the sentencing hearing and determined the jury's verdict as stated on the verdict form amounted to

2

> a correctable mistake. The district court reasoned that "it's clear that it was the jury's intention ... [to] return a verdict of guilty ... to [*sic*] attempted voluntary manslaughter."
>
> The district court sentenced Brown to 120 months in prison for attempted voluntary manslaughter, reflecting a standard guidelines punishment. Brown received a concurrent prison term of 12 months for the aggravated assault conviction and a consecutive prison term of 8 months for the firearms possession conviction. The district court also placed Brown on postrelease supervision for 24 months and ordered [that] he pay a substantial amount of restitution.

*State v. Brown*, 404 P.3d 700 (Table), 2017 WL 5016171, at *1–2 (Kan. Ct. App. 2017).

As described above, on December 3, 2015, after a jury trial in the District Court of Cowley County, Kansas, Petitioner was convicted of one count attempted of voluntary manslaughter, one count of aggravated assault, and one count of criminal possession of a firearm by a convicted felon. (Doc. 17 at 3.)  Petitioner appealed his conviction, and the Kansas Court of Appeals reversed and remanded his conviction for attempted voluntary manslaughter. *State v. Brown*, 404 P.3d 700 (Table), 2017 WL 5016171, at *5 (Kan. Ct. App. Nov. 3, 2017) ("*Brown I*").  It affirmed Petitioner's convictions for aggravated assault and criminal possession of a firearm. *Id.* at *6–8. The Kansas Supreme Court disagreed with the Kansas Court of Appeals and overturned its decision reversing Petitioner's conviction. *State v. Brown*, 311 Kan. 527, 537, 464 P.3d 938, 944–45 (2020) ("*Brown II*").  Petitioner filed this petition for federal habeas corpus relief on May 21, 2021.  (Doc. 1.)

**II.     Standard**

Habeas petitions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Hooks v. Ward*, 184 F.3d 1206, 1213 (10th Cir. 1999).  A federal court shall not grant a writ of habeas corpus unless the state's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or the decision "was based on an unreasonable determination of the facts in light of the evidence

3

presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). A "decision is 'contrary to' a clearly established law if it applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Underwood v. Royal*, 894 F.3d 1154, 1162 (10th Cir. 2018) (quoting *Lockett v. Trammel*, 711 F.3d 1218, 1231 (10th Cir. 2013)). A "decision is an 'unreasonable application' of clearly established federal law if it identifies the correct governing legal principle … but unreasonably applies that principle to the facts of petitioner's case." *Id.* (quoting *Lockett*, 711 F.3d at 1231).

An unreasonable application of federal law is a higher bar than even an incorrect or erroneous application of federal law. *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) ("Even a clearly erroneous application of federal law is not objectively unreasonable. . . . Rather, a state court's application of federal law is only unreasonable if all fairminded jurists would agree the state court decision was incorrect.") (alterations and quotations omitted)).

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner's burden is to rebut this presumption by clear and convincing evidence. *Id.* A reviewing federal court is bound by the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

### III. Motions to Appoint Counsel (Docs. 27, 28)

While this case has been pending, Petitioner has filed two motions to appoint counsel which the court now addresses.

"[A] district court has discretion to request counsel to represent an indigent party in a civil case" under 28 U.S.C. § 1915(e)(1). *Commodity Futures Trading Comm'n v. Brockbank*, 316 F. App'x 707, 712 (10th Cir. 2008). Additionally, the court has authority to appoint counsel in a case brought under 28 U.S.C. § 2254 when the interests of justice so require. 18 U.S.C. § 3006A(a)(2)(B). The decision to appoint counsel "is left to the sound discretion of the district court*." Lyons v. Kyner*, 367 F. App'x 878, 883 n.9 (10th Cir. 2010).

The Tenth Circuit has identified four factors to consider in deciding whether to appoint counsel for an individual: (1) petitioner's ability to afford counsel, (2) petitioner's diligence in searching for counsel, (3) the merits of petitioner's case, and (4) petitioner's capacity to prepare and present the case without the aid of counsel. *See Castner v. Colorado Springs Cablevision*, 979 F.2d 1417, 1420–21 (10th Cir. 1992).

Since Petitioner is currently held in prison with limited access to funds, the court notes that the first factor weighs in his favor.[3] As to the second factor, Petitioner has not illustrated any attempt made at obtaining counsel. With nothing before the court stating otherwise, the second factor weighs against appointing counsel. The third and fourth factors also weigh against appointing counsel. Petitioner prepared and presented a non-frivolous case, but the merits of the case do not warrant appointing counsel. This case simply does not present the type of complex, meritorious claim which would require appointment of counsel. The court denies Petitioner's motions to appoint counsel.

**IV.     Analysis**

---

[3] Petitioner has attached Inmate Account Statements to two of his motions for leave to proceed *in forma pauperis*, which indicate that he has access to some funds, although likely not in an amount sufficient to pay for an attorney's services. (Docs. 5-1, 6-1.)

Petitioner argues that the district court erred when it revised the jury's verdict form, violating his Sixth and Fourteenth Amendment rights. (Doc. 1 at 5.) As a corollary, Petitioner also argues that the district court erred in failing to instruct the jury on attempted involuntary manslaughter. (*Id.* at 7.) Finally, Petitioner argues that there was insufficient evidence presented as to the aggravated assault charge of which he was convicted. (*Id.* at 8.)

### A. Revision of Jury Verdict Form

Petitioner argues that the district court's revision of the jury verdict form after the jury was discharged violated his Sixth and Fourteenth Amendment rights. (*Id.* at 5.) The issue with the verdict form is that the jury found Petitioner guilty of attempted *involuntary* manslaughter, a crime for which Petitioner was not charged and which does not exist under Kansas law. The verdict form referenced the jury instruction on attempted *voluntary* manslaughter. The error was not noticed until after the jury was polled and discharged.

Petitioner's argument can be read more generally as an argument that his due process rights were violated. Thus, the federal right at issue here is Petitioner's right to due process of law. When a petitioner alleges a violation of his right to due process, the question is whether the court's decision "rendered the proceedings fundamentally unfair." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). Courts have "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

The state court, in addressing Petitioner's complaints about the jury verdict form, relied on case law from the United States Supreme Court. *Brown II*, 464 P.3d at 943–44 (discussing *Statler v. United States*, 157 U.S. 277 (1895)). The *Statler* Court explained the surplusage rule as it relates to jury verdicts:

> The words, being 'the finding of lay people,' need not be framed under the strict rules of pleading, or after any technical form. Any words which convey the idea to

6

> the common understanding will be adequate; and all fair intendments will be made to support it. To say, therefore, that the defendant is 'guilty,' or guilty of an offense named which is less than the whole alleged, is sufficient, without adding 'as charged in the indictment'; for the latter will be supplied by construction. So, likewise, a general finding of 'guilty' will be interpreted as guilty of all that the indictment well alleges. * * * Surplusage in a verdict may be rejected, being harmless, the same as in pleading; and the verdict must be construed as a whole, not in separate parts.

157 U.S. at 279 (quotation omitted, alterations in original).

*Statler* then utilized the surplusage rule to strike from a jury's verdict extra words which created some ambiguity. *Id.* at 279–80. This was the appropriate standard for the state court to rely on in determining whether an ambiguity in a verdict is the result of surplusage. The Kansas Supreme Court also went through a detailed analysis of case law from Kansas and other jurisdictions involving similar errors on jury verdict forms and when those errors are the result of surplusage. *Id.* at 940–46. The court determined that based on the record as a whole, the error here, the added prefix "in-," was surplusage and could be rejected. *Id.* at 945–46.

The state court decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. The Kansas Supreme Court identified and applied a United States Supreme Court decision that set out the rule for surplusage which helped to clarify an ambiguous verdict. *Brown II*, 464 P.3d at 943–44. This was the correct rule to apply. Further, the decision was not an unreasonable application of the principle of surplusage to the facts of this case. The state court went through a reasoned discussion and identified several pertinent portions of the record which led to its conclusion:

- The crime of attempted *involuntary* manslaughter was never at issue during trial.
- Defense counsel requested an "attempted voluntary manslaughter" instruction, and his proposed verdict form said the same.
- Instruction No. 7 correctly named the lesser included offense of "attempted voluntary manslaughter" and listed its elements.

7

- Instruction No. 11 correctly summarized the verdict options and stated "attempted voluntary manslaughter" as the lesser included offense.
- The district court correctly read the instructions to the jury, including Instructions No. 7 and No. 11.
- Until closing argument, the court and parties only mentioned "attempted voluntary manslaughter" on the record.
- During closing argument, defense counsel mistakenly said "attempted *involuntary* manslaughter" but the district court instantly corrected him, saying, "Excuse me, you said 'involuntary.' You meant 'voluntary.'" Defense counsel thanked the court and said, "I meant 'voluntary.'"
- The verdict form referred to the correct jury instruction: "We, the jury, find the defendant guilty of the lesser offense of attempted involuntary manslaughter as set forth in Instruction No. 7."

*Id.* at 946. There was no unreasonable application of clearly established federal law here.

Further, there was no unreasonable determination of the facts in light of the evidence presented. The portion of the state court's decision quoted above illustrates that the facts were considered in detail. Petitioner has offered no clear and convincing evidence to rebut the presumption that the facts as decided by the state court are correct. Accordingly, Petitioner's argument fails.

Because the court has identified no error, there is no fundamental unfairness resulting from the state court's decision, and no violation of Petitioner's right to due process.

### B. Failure to Instruct on Attempted Involuntary Manslaughter

Petitioner argues that the state court erred when it did not instruct the jury on attempted involuntary manslaughter as a lesser included offense. (Doc. 1 at 7.) According to Petitioner, because he argued self-defense, "the jury could have reasoned he undertook a lawful act, but performed the act in an unlawful manner by using excessive force." (*Id.*) Respondent reasons that this is an issue of state law and does not present a federal constitutional question for habeas relief. (Doc. 17 at 11–13.)

8

Petitioner does not identify a constitutional right which was violated when the district court did not instruct the jury on attempted involuntary manslaughter, and the court agrees with Respondent that this issue does not present a federal constitutional question which could warrant habeas relief. *Kalbaugh v. Martin*, 809 F. App'x 481, 489 (10th Cir. 2020) ("Kalbaugh's first instructional-error claim fails to raise a constitutional error because '[t]he Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has this court.'") (quoting *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004)). Because there is no federal right at issue here, the analysis must end, and the court will not examine Petitioner's argument further.

### C. Insufficient Evidence of Aggravated Assault

Petitioner argues there is insufficient evidence to support his conviction for aggravated assault because none of the evidence suggested that Petitioner knowingly or intentionally placed the victim in reasonable apprehension of immediate bodily harm. (Doc. 1 at 8.) Respondent contends that the state court reasonably applied clearly established federal law, and that even on the merits, the insufficiency claim cannot succeed. (Doc. 17 at 14.)

The federal right at issue is the right to due process, which includes the right not to be convicted except when there is proof beyond a reasonable doubt of facts which establish guilt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The state court recognized that its job on review was to ask "whether rational jurors could have found the defendant guilty beyond a reasonable doubt." *Brown I*, 2017 WL 5016171, at *7. This is consistent with the standard under *Jackson*. *Jackson*, 443 U.S. at 319 ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (italics in original)).

9

The state court examined the evidence in the light most favorable to the prosecution and found that the evidence was sufficient. The court noted that under Kansas law, Petitioner knowingly placed the victim in reasonable apprehension of immediate bodily harm if he was aware that his conduct was reasonably certain to cause apprehension of immediate bodily harm. *Brown I*, 2017 WL 5016171, at *7 (citing K.S.A. 2016 Supp. 21-5412(a), (b)(1); K.S.A. 2016 Supp. 21-5202(i)). The state court summarized some of the relevant facts:

> [Petitioner] fired multiple shots at Lolar in close quarters with Jordan and other people in the immediate vicinity. In that situation, [Petitioner] could have and should have expected Jordan and the others to be reasonably apprehensive or anxious that they might be hit by a poorly aimed shot. The crime did not require evidence that [Petitioner] meant to shoot anyone other than Lolar – only that he could be fairly certain his decision to repeatedly fire the handgun would cause Jordan to be worried for his own safety.

*Id.*

This was not an unreasonable application of federal law. As noted above, the state court applied the appropriate standard to the case. And this principle has not been unreasonably applied to the facts of Petitioner's case, as the state court undertook a thorough review of the evidence which was not objectively unreasonable.

Moreover, this was not an unreasonable determination of the facts. Petitioner has not come forward with clear and convincing evidence to rebut the presumption that the state court's determination of factual issues is correct. Thus, the state court is entitled to the presumption that its determination of the facts was correct.

Petitioner's argument that insufficient evidence supports his conviction for aggravated assault fails.

V.    **Conclusion**

For all the reasons stated above, Petitioner's petition for a writ of habeas corpus (Doc. 1) is DENIED.  Petitioner's other pending motions (Docs. 27, 28, 29 30) are DENIED.

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, this court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court must indicate "which specific issue or issues satisfy the showing."  This requires Petitioner to show that this court's ruling was "debatable among reasonable jurists."  *Harris v. Sharp*, No. 17-6109, 2019 WL 5541416, at *37 (10th Cir. Oct. 28, 2019) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)).

The court finds that a certificate of appealability should not issue in this case.  Nothing in the record suggests that the Tenth Circuit would resolve these issues differently.

IT IS SO ORDERED this 9th day of March, 2023.


    ___s/ John W. Broomes_____
    JOHN W. BROOMES
    UNITED STATES DISTRICT JUDGE